# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| LOCAL 101 OF THE AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES,<br><br>Plaintiff,<br><br>v.<br><br>EDMUND G. BROWN, et al.,<br><br>Defendants. | Case No.  14-cv-05640-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>[Re:  ECF 35] |

Plaintiff Local 101 of the American Federation of State, County, and Municipal Employees ("Plaintiff") is a labor union whose members include employees of the Santa Clara Valley Water District ("the District").  At issue in this lawsuit is a collective bargaining agreement between Plaintiff and the District for the period January 1, 2012 through December 31, 2014 ("the CBA").  Plaintiff claims that the CBA was impaired by California's enactment of the Public Employees' Pension Reform Act of 2013 ("PEPRA" or "the Act"), Cal. Gov't Code § 7522 *et seq*.  Plaintiff brings suit against the State of California and related entities and individuals under the Contract Clause of the United States Constitution.  Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that the complaint fails to state a claim and is barred by the Eleventh Amendment.

The Court has considered the parties' briefing and the relevant legal authorities.[1]  For the reasons discussed below, the motion is GRANTED IN PART, WITHOUT LEAVE TO AMEND, AND DENIED IN PART.

---

[1] Defendants' motion was submitted without oral argument at the request of the parties.

## I. BACKGROUND

Plaintiff and the District have a longstanding relationship under which they have entered into successive collective bargaining agreements.[2] Compl. ¶¶ 22-23. Under the terms of those agreements, District employees participate in the California Public Employees Retirement System ("CalPERS"). *Id.* ¶¶ 31-32. The District and CalPERS also have a longstanding contractual relationship under which the District participates in CalPERS and the District's employees are members of CalPERS. *See* District-CalPERS Contract, Defs.' RJN Exh. 1, ECF 36-1.

### CBA

In 2011, the parties began negotiating a collective bargaining agreement for the period 2012 through 2014. Compl. ¶¶ 23, 33. A key negotiating point was pension benefits for new employees. *Id.* ¶¶ 33. The parties ultimately entered into the CBA at issue in this case. Two provisions of the CBA are relevant here. The first provision states that:

> The District will continue to participate in the Public Employees' Retirement System (PERS) with benefits as currently provided at the 2.5% @ 55 Formula Benefit Level for employees hired prior to January 1, 2012. Employees hired January 1, 2012 or thereafter, will participate in the Public Employees' Retirement System (PERS) with benefits provided in the contract with PERS at the 2% @ 60 formula Benefit Level.

CBA Art. 6, Section 1.A, ECF 36-2. The second provision states that:

> Employees will reimburse the District 3.0% of the employer's Annual Required Contribution (ARC) of the 2.5% @ 55 Formula Benefit Level through direct payroll deductions. Employees will pay the full 8% of the PERS employee (member) contribution. Employees hired under the 2.0% @ 60 Formula Benefit Level will reimburse the District 3.0% of the employer's annual required contribution. Employees will pay the full 7.0% of the PERS employee (member) contribution. These deductions will be pre-tax.

CBA Art. 6, Section 1.B, ECF 36-2.

### PERL/PEPRA

California's Public Employees' Retirement Law ("PERL") "establishes a retirement system for certain state and local government employees." *California Ass'n of Prof'l Scientists v.*

---

[2] The parties' briefing also refers to the collective bargaining agreements as memoranda of understanding or "MOUs."

*Schwarzenegger ("CAPS")*, 137 Cal. App. 4th 371, 376 (2006).  At the time the CBA was negotiated, PERL placed no limits on local agencies' authorization to negotiate the defined benefit formulas[3] used to calculate their employees' pension benefits.  After the CBA took effect, PERL was amended by PEPRA to limit the defined benefit formulas available to new members[4] of all state and local government retirement plans.  *See* Cal. Gov't Code §§ 20004 , 7522.15; *Deputy Sheriffs' Ass'n of San Diego Cnty. v. Cnty. of San Diego*, 233 Cal. App. 4th 573, 577 (2015).  PEPRA became effective on January 1, 2013.  *See* Cal. Gov't Code § 7522.02(a)(1).[5]

As relevant here, PEPRA requires that public employers and public retirement systems offer new members *only* the defined benefit formulas established pursuant to § 7522.20.  Cal. Gov't Code § 7522.15.  Section 7522.20 sets forth a table of defined benefit formulas that are less favorable than the 2%-at-60 formula provided to new hires under the CBA.  *See* Cal. Gov't Code § 7522.20(a).  For example, while the CBA provides that new hires receive benefits under a 2%-at-60 formula, *see* CBA Art. 6, Section 1.A, ECF 36-2, PEPRA provides that new members receive benefits under a 2%-at-62 formula, *see* Cal. Gov't Code § 7522.20(a).  CalPERS has applied the negotiated 2%-at-60 formula benefit level to District employees hired before PEPRA's effective date of January 1, 2013, but it has applied the formulas set forth in PEPRA to District employees who became new members of the retirement system on or after January 1, 2013 irrespective of

---

[3] "Defined benefit formula means a formula used by the retirement system to determine a retirement benefit based on age, years of service, and pensionable compensation." *Deputy Sheriffs' Ass'n of San Diego Cnty. v. Cnty. of San Diego*, 233 Cal. App. 4th 573, 577 n.4 (2015) (internal quotation marks and citation omitted).

[4] "New member" is defined as:  (1) An individual who becomes a member of any public retirement system for the first time on or after January 1, 2013, and who was not a member of any other public retirement system prior to that date; (2) An individual who becomes a member of a public retirement system for the first time on or after January 1, 2013, and who was a member of another public retirement system prior to that date, but who was not subject to reciprocity under subdivision (c) of Section 7522.02; or (3) An individual who was an active member in a retirement system and who, after a break in service of more than six months, returned to active membership in that system with a new employer.  Cal. Gov't Code § 7522.04(f).

[5] Certain provisions of PEPRA, including § 7522.02, were amended subsequent to the filing of this action.  *See* Stats. 2014, c. 757 (S.B. 1251), § 2, eff. Jan. 1, 2015; *see also* 2015 Cal. Legis. Serv. c. 158 (S.B. 354), filed with Sec'y of State Aug. 10, 2015.  However, the amendments do not affect the sections relevant to Defendants' motion.

contrary provisions in the CBA. *Id.* ¶¶ 43, 65-66.

PEPRA made the additional modification to require that employees contribute at least 50% of the "normal costs" of the plan of retirement benefits, with "[e]qual sharing of normal costs between public employers and public employees" being the standard. Cal. Gov't Code § 7522.30(a). However, if the terms of a collective bargaining agreement in effect on January 1, 2013 would be impaired by PEPRA's contribution provisions, those provisions do not apply until the collective bargaining agreement expires. Cal. Gov't Code § 7522.30(f). In the present case, the CBA requires employees to pay more than 50% of the normal cost rate, specifically, 3% of the District's contribution. CBA Art. 6, Section 1.B, ECF 36-2. Because that aspect of the CBA would be impaired by application of PEPRA's conflicting provisions, and the CBA was in effect on January 1, 2013, CalPERS has applied the CBA's additional 3% employee contribution requirement throughout the term of the CBA. Compl. ¶ 67.

### Grievance Against District

Plaintiff instituted a grievance against the District under the CBA's grievance and arbitration procedures. Compl. ¶¶ 68-70. The arbitrator determined that the District had breached the CBA by failing to provide the level of pension benefits required thereunder. *Id.* ¶¶ 75-79. Plaintiff sought to confirm the arbitration award against the District in the Santa Clara County Superior Court and named the CalPERS Board of Administration ("CalPERS Board") as an indispensable party to that action. *Id.* ¶¶ 80-82. The superior court dismissed the CalPERS Board on the ground that it was not a party to the underlying arbitration, confirmed the arbitration award against the District, and entered judgment on May 12, 2014. *Id.* ¶¶ 83-84. The District sought to comply with the superior court's judgment by requesting that CalPERS honor the judgment and the terms of the CBA. *Id.* ¶ 86. CalPERS declined, stating that it would continue to comply with PEPRA. *Id.* ¶ 87.

### The Present Lawsuit

On December 29, 2014, Plaintiff filed the present action, asserting that California's enactment of PEPRA substantially impaired the CBA in violation of the Contract Clause of the United States Constitution. The complaint names as defendants Edmund G. Brown, Jr., in his

4

1  official capacity as the Governor of the State of California; several members of the CalPERS
2  Board, in their official capacities; Anne Stausboll, in her official capacity as Chief Executive
3  Officer of CalPERS; the State of California; and CalPERS.  The complaint also names the District
4  as an indispensable party/party in interest.  Plaintiff asserts claims for:  (1) declaratory judgment
5  and injunctive relief against all defendants under 28 U.S.C. §§ 2201-2201 and the Contract
6  Clause; and (2) declaratory judgment and injunctive relief against the individual defendants under
7  42 U.S.C. § 1983 and the Contract Clause.  In its prayer, Plaintiff requests a declaratory judgment
8  that PEPRA unconstitutionally impaired the CBA; a permanent injunction prohibiting Defendants
9  and those in concert with them from applying PEPRA in a manner that impairs the CBA; an award
10 of fees and costs, including costs awardable under 42 U.S.C. § 1988(b); and such other relief as
11 the Court deems just and proper.

12  The District has answered the complaint.  All other Defendants move to dismiss.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

### III. DISCUSSION

Defendants move to dismiss the complaint on the grounds that it fails to state a cognizable claim under the Contract Clause and is barred by the Eleventh Amendment.[6]

### A. Judicial Notice

Before taking up the substance of Defendants' motion, the Court addresses the parties' requests for judicial notice. Plaintiff requests that the Court take judicial notice of a brief filed by CalPERS in a bankruptcy action, a brief filed by CalPERS in Plaintiff's state court action to confirm the arbitration award, and legislative history materials. Plaintiff's request is granted. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."); *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (court may take judicial notice of matters of public record).

Defendants request that the Court take judicial notice of the CBA and the contract between the District and CalPERS. *See* Defs.' RJN, ECF 36. Defendants' request is granted. *See Caldwell v. Wells Fargo Bank, N.A.*, No. 13-CV-01344-LHK, 2014 WL 789083, at *2 n.2 (N.D. Cal. Feb. 26, 2014) (court may take judicial notice of official acts of the executive department of the State of California). The Court notes that it also may consider the CBA and the District-CalPERS contract under the incorporation by reference doctrine. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporation by reference doctrine permits a court to consider documents referenced in but not physically attached to the complaint).

---

[6] Plaintiff asserts in its opposition that Defendants' Eleventh Amendment challenge should have been brought as a motion for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) instead of a motion for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Pl.'s Opp. at 1 n.1, ECF 43. The Ninth Circuit has held that "dismissal based on Eleventh Amendment immunity is not a dismissal for lack of subject matter jurisdiction, but instead rests on an affirmative defense." *Elwood v. Drescher*, 456 F.3d 943, 949 (9th Cir. 2006) (internal quotation marks and citation omitted). At least one court in this district has concluded that a motion to dismiss under the Eleventh Amendment should be analyzed under Rule 12(b)(6) rather than Rule 12(b)(1). *See Steshenko v. Albee*, 70 F. Supp. 3d 1002, 1008 n.1 (N.D. Cal. 2014). This Court concludes that Defendants' Eleventh Amendment challenge properly is brought under Rule 12(b)(6).

**B.     Contract Clause**

**1.     Applicable Law**

Turning to Defendants' first argument, the Court considers the adequacy of Plaintiff's claims under the Contract Clause. The Contract Clause provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. Art. I, § 10, cl. 1. "Although the Contract Clause appears literally to proscribe 'any' impairment . . . the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula." *United States Trust Co. of New York v. State of New Jersey*, 431 U.S. 1, 21 (1977) (internal quotation marks and citation omitted). "[T]he Contract Clause does not prohibit the States from repealing or amending statutes generally, or from enacting legislation with retroactive effects." *Id.* at 17. However, "a State cannot refuse to meet its legitimate financial obligations simply because it would prefer to spend the money to promote the public good rather than the private welfare of its creditors." *Id.* at 29. "Legislation adjusting the rights and responsibilities of contracting parties must be upon reasonable conditions and of a character appropriate to the public purpose justifying its adoption." *Id.* at 22.

The Supreme Court has developed a multi-part test to balance these competing interests when a party asserts a claim under the Contract Clause. First, the court must determine "whether the change in state law has operated as a substantial impairment of a contractual relationship." *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (internal quotation marks and citation omitted). "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Id.*; *see also San Diego Police Officers Ass'n v. San Diego City Employees' Retirement Sys.*, 568 F.3d 725, 736-37 (9th Cir. 2009) (reciting test). If a substantial impairment is found, the court must determine whether the impairment "is reasonable and necessary to serve an important public purpose." *United States Trust Co.*, 431 U.S. at 25; *see also San Diego Police Officers Ass'n*, 568 F.3d at 737. If so, the impairment may be constitutional. *United States Trust Co.*, 431 U.S. at 25. When the impairment modifies the state's own financial obligations, "complete deference to a legislative assessment of reasonableness and necessity is not appropriate

because the State's self-interest is at stake." *Id.* at 26. "If a State could reduce its financial obligations whenever it wanted to spend the money for what it regarded as an important public purpose, the Contract Clause would provide no protection at all." *Id.*

### 2. Existence of Contractual Relationship

Defendant contends that Plaintiff has failed to allege facts sufficient to satisfy the first component of the Contract Clause inquiry, that is, "whether there is a contractual relationship." *Romein*, 503 U.S. at 186. The Ninth Circuit has clarified that the "contractual relationship" requirement articulated by *Romein* is satisfied only if "a contract exists as to the specific terms allegedly at issue." *San Diego Police Officers Ass'n*, 568 F.3d at 736. Plaintiff asserts that the "contractual relationship" component is satisfied by the complaint's allegations that Plaintiff and the District entered into a written CBA which provides expressly that new employees will receive pension benefits under a 2%-at-60 formula. Defendants argue that the 2%-at-60 provision of the CBA is not an enforceable contract term as applied to new employees who first commence employment after January 1, 2013.[7]

The complaint alleges that Plaintiff "is the recognized exclusive collective bargaining representative of a bargaining unit of employees employed by the District, within the meaning of the Meyers-Milias-Brown Act, California Government Code §§ 3500, *et seq.*" Compl. ¶ 10. The Meyers-Milias-Brown Act ("MMBA") requires that a public agency negotiate in good faith with a recognized collective bargaining representative as to "matters within the scope of representation." Cal. Gov't Code § 3505. Plaintiff alleges that "[p]ension and retirement benefits are a mandatory subject of bargaining under the MMBA." Compl. ¶ 25. Once agreement is reached, the public agency and the collective bargaining representative must jointly reduce the terms of the agreement to a written memorandum of understanding. Cal. Gov't Code § 3505.1. The CBA at issue in this

---

[7] The parties focus on PEPRA's alleged impairment of the CBA's 2%-at-60 term. While not entirely clear, it appears that Plaintiff may be asserting as an additional basis for its Contract Clause claims that PEPRA leaves in place the CBA's requirement that new employees pay 3% of the employer's contribution. Plaintiff has not cited, and the Court has not discovered, authority for the proposition that a Contract Clause claim may be based upon a statute's *failure* to impair an express contract term. Because the Court concludes that Plaintiff adequately has alleged the existence of a contract as to the 2%-at-60 term, the Court need not address the viability of Plaintiff's alternative theory at this time.

8

case, effective January 1, 2012 through December 31, 2014, was duly reduced to writing, ratified by Plaintiff's members, adopted by the District, and executed by Plaintiff and the District. Compl. ¶¶ 28, 38; CBA, Defs.' RJN Exh. 2, ECF 36. Plaintiff alleges that throughout their long bargaining history, Plaintiff and the District "have negotiated levels of pension benefits for new and future employees hired during the CBA's respective term." Compl. ¶ 29. Consistent with that practice, the CBA at issue here expressly provides that employees hired during the term of the CBA are entitled to pension benefits using a 2%-at-60 formula. Compl. ¶ 35-36; CBA, Defs.' RJN Exh. 2. Facially, these allegations appear sufficient to allege the existence of a contractual relationship between Plaintiff and the District and, more specifically, the existence of a written contract term specifying the application of the 2%-at-60 formula to employees hired during the term of the CBA.

Defendants do not challenge Plaintiff's allegations regarding negotiation of the CBA, its reduction to writing, and its execution. Defendants mount a legal challenge to Plaintiff's Contract Clause claims, asserting that under California law the parties could not have entered into a binding agreement with respect to the pension rights of future employees. Defendants' reasoning goes as follows: under California law, pension rights are governed by statute; a public employee obtains vested pension rights under those statutes only upon the commencement of employment; a *future* public employee has no vested rights in any particular pension plan; and thus a public employee has no rights, contractual or otherwise, in any pension benefits other than those provided under the pension statutes in effect at the start of his or her employment. Defendants maintain this to be the case "even if a CBA purporting to cover prospective employees is in existence before the statutory amendments." Defs.' Motion at 10, ECF 35. According to Defendants, "[t]o the extent that the amendments conflict with an existing CBA but were enacted before a new employee's hiring, the amendments effectively replace the conflicting terms in the CBA as to the new employee." *Id.*

Defendants rely heavily upon California cases addressing pension rights under California law. "The question whether a contract was made is a federal question for purposes of Contract Clause analysis." *Romein*, 503 U.S. at 187. While it should "accord respectful consideration and great weight to the views of the State's highest court," a federal court addressing a Contract

Clause claim is "bound to decide" for itself whether a contract was made and "can not surrender the duty" to exercise its own judgment in that respect. *Id.* (internal quotation marks and citation omitted). Thus while this Court may consider California decisions on point, it need not follow them.

Defendants cite *Deputy Sheriffs' Ass'n*, 233 Cal. App. 4th 573, in which the plaintiff union claimed that California's contract clause[8] prohibited PEPRA's application to employees who were hired after PEPRA's effective date but who were covered by preexisting collective bargaining agreements containing conflicting terms. In rejecting that claim, the California Court of Appeal noted that terms and conditions of public employment generally are controlled by statute rather than contract and that pension rights under those statutes do not vest until an employee starts work. *Id.* at 577-79. The union acknowledged that its new members "did not have a vested right to the application of the negotiated 3% @ 55 formula because they had not performed any services for the county before [PEPRA's] effective date." *Id.* at 579. However, the union argued that the *collective bargaining agreements* gave rise to constitutionally protected rights because the agreements predated PEPRA, were binding, and required use of the negotiated formula until they expired. *Id.* The court concluded that "the association's position conflicts with authorities indicating there is no contract clause protection for unvested contractual pension rights." *Id.* However, none of the authorities string-cited in support of that conclusion addressed the critical question, whether a union that has negotiated a collective bargaining agreement on behalf of present and future members has enforceable contract rights as to those terms of the agreement relating to pension benefits for future members. Accordingly, this Court does not find *Deputy Sheriffs' Ass'n* to be determinative.

The issue of a union's right to enforce the terms of a collective bargaining agreement regarding future employees was touched on in an earlier state appellate court decision, *CAPS,* 137 Cal. App. 4th 371. In *CAPS*, the plaintiff union asserted that an amendment to PERL impaired a

---

[8] "The contract clauses of both the federal and California Constitutions prohibit a state from passing laws impairing the obligation of contracts." *Teachers' Retirement Bd. v. Genest*, 154 Cal. App. 4th 1012, 1026 (2014) (citing U.S. Const., Art. I, § 10; Cal. Const., Art. I, § 9).

collective bargaining agreement between itself and the state. The change in pension rights applied only to future employees, not those already employed by the state when the amendment took effect. *Id.* at 383. The court questioned the application of the vested pension rights line of cases to a situation where a collective bargaining agreement exists, stating that "[w]hen a collective bargaining agreement purports to secure pension rights for future employees, it may well be that the federal and state contract clauses protect the rights of future employees as much as the rights of existing employees." *Id.* However, the court then declined to reach the contract clause issue and resolved the case on other grounds. *Id.* Observing that the collective bargaining agreement expressly incorporated a preexisting statutory pension scheme, the court held that "[t]he pension rights provided to new employees by the incorporation of section 21070.5 into the agreement are no different than any other pension rights for state employees – they 'vest' upon the acceptance of employment." *Id.* at 385. The *CAPS* court expressly refused to interpret the collective bargaining agreement before it as including a promise not to change the statutory pension scheme as to new employees absent a clear expression in that agreement that the state had "bargained away its sovereign right to change the character of pension rights for future employees." *Id.* at 384. The court concluded that as a result, the statutory amendment "did not impair any vested contractual rights." *Id.* at 386.

The holding in *CAPS* appears to rest in part upon the recognition that the state has a right to, and might be expected to, amend a statutory pension scheme that it created. Thus to the extent that the collective bargaining agreement in *CAPS* simply incorporated the existing statutory scheme, and placed the union's members on the same footing as any other employee under that scheme, the union's future members would not be protected against statutory amendments. That reasoning does not apply in the present case, in which the CBA between Plaintiff and the District did not incorporate an existing statutory pension scheme. As the Court understands it, pension formulas and other retirement benefits were purely a matter of negotiation between Plaintiff and the District prior to the enactment of PEPRA.

The Supreme Court has held that "the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they

11

1   were expressly referred to or incorporated in its terms." *United States Trust Co.*, 431 U.S. at 19
2   n.17.  "This principle presumes that contracting parties adopt the terms of their bargain in reliance
3   on the law in effect at the time the agreement is reached." *Id.*  Given the state's lack of
4   involvement in mandating limits to retirement benefits for employees of local agencies at the time
5   the CBA was negotiated, and absent persuasive authority to the contrary, the Court declines to find
6   as a matter of law at this stage of the proceedings that Plaintiff cannot assert a Contract Clause
7   claim based upon the CBA's 2%-at-60 term.  Negotiated terms of public employee collective
8   bargaining agreements have been held to satisfy the "contractual relationship" requirement in
9   many other contexts.  *See, e.g., Univ. of Hawaii Prof'l Assembly v. Cayetano*, 183 F.3d 1096 (9th
10  Cir. 1999) (finding impairment for Contract Clause purposes resulting from enactment of "pay
11  lag" law allowing state to postpone the dates on which state employees were paid); *Toledo Area
12  AFL-CIO Council v. Pizza*, 154 F.3d 307 (6th Cir. 1998) (statute impaired contracts by abrogating
13  terms of pre-existing collective bargaining agreements granting public employees the right to
14  make political contributions through wage checkoffs); *Baltimore Teachers Union v. Mayor and
15  City Council of Baltimore*, 6 F.3d 1012 (4th Cir. 1993) (salary reductions implemented to meet
16  budgetary shortfall impaired contract with teachers and police but impairment was permissible
17  under the Contract Clause).  Defendants have not established that the terms of the CBA should be
18  treated differently.

19  Defendants point out that the contract between the District and CalPERS provides that the
20  District's employees are members of CalPERS "subject to all provisions of the Public Employee's
21  Retirement Law . . . *and to all amendments to said Law hereafter enacted.*"  District-CalPERS
22  Contract ¶ A.2, Defs.' RJN Exh. 1, ECF 36-1 (emphasis added).  However, given that the state had
23  never mandated particular pension formulas with respect to employees of local public agencies,
24  and absent a finding that Plaintiff – a non-party to the contract – was aware of that contractual
25  language, the Court cannot evaluate on a motion to dismiss what (if any) legal effect the District-
26  CalPERS contract may have on Plaintiff's Contract Clause claims.

27      **3.    Conclusion**

28  For the reasons discussed above, the Court concludes that Defendants have failed to

demonstrate that Plaintiff's allegations are insufficient to establish the requisite "contractual relationship." Defendants do not challenge the sufficiency of Plaintiff's allegations with respect to the other components of a Contract Clause claim, such as whether PEPRA impaired the contractual relationship, whether the impairment is substantial, and whether any impairment is reasonable and necessary. Accordingly, Defendants' motion to dismiss for failure to state a claim is DENIED.[9]

### B. Eleventh Amendment

Defendants argue that even if the complaint otherwise states cognizable Contract Clause claims, the Eleventh Amendment bars litigation of those claims in federal court. The Eleventh Amendment analysis of Plaintiff's claims against the state and CalPERS differs somewhat from the analysis of Plaintiff's claims against the individual defendants. The two sets of claims are addressed separately, as follows.

#### 1. State and CalPERS

"The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies." *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) (citation omitted). A state may waive its immunity and, in some circumstances, Congress may abrogate it by legislation. *Virginia Office for Protection and Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011). However, absent such waiver or legislation, the state is absolutely immune from suit in federal court. *Id.*

Applying these standards, Plaintiff's claims against the state and CalPERS appear to be absolutely barred. Plaintiff does not assert that the state has waived immunity or that the Legislature has abrogated the state's immunity here. Plaintiff argues that Defendants "have failed to meet their burden" of establishing that they have not waived sovereign immunity. Pl.'s Opp. at

---

[9] In light of this disposition, the Court need not reach Plaintiff's argument that PEPRA's impairment of the CBA "has already been decided, by the arbitrator, in accordance with state and federal law." *See* Pl.'s Opp. at 11, ECF 43. The Court notes, however, that to the extent that Plaintiff is attempting to assert res judicata or collateral estoppel, those doctrines may be asserted only against parties to the prior action or their privies. *Montana v. United States*, 440 U.S. 147, 153 (1979). It does not appear from the limited record currently before the Court that the defendants in this case were parties to the arbitration or in privity with such parties.

13

16-17, ECF 43. However, Defendants have asserted sovereign immunity at the first opportunity by bringing the present motion. Plaintiff does not cite any authority suggesting that something more is required. Plaintiff also questions the applicability of the Eleventh Amendment immunity to CalPERS. A number of district courts have found CalPERS to be an arm of the state for purposes of Eleventh Amendment immunity. *See, e.g., Arya v. CalPERS*, 943 F. Supp. 2d 1062, 1072 (E.D. Cal. 2013) (collecting cases). The case cited by Plaintiff, *In re City of Stockton*, 526 B.R. 35 (Bankr. E.D. Cal. 2015), does not address whether CalPERS is entitled to Eleventh Amendment immunity.

Accordingly, Defendants' motion to dismiss on Eleventh Amendment grounds is GRANTED WITHOUT LEAVE TO AMEND as to Plaintiff's claims against the State of California and CalPERS.

### 2. Individual Defendants

"Eleventh Amendment immunity also shields state officials from official capacity suits." *Krainski v. Neveda ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010). However, the *Ex parte Young* doctrine provides a narrow exception to a state official's immunity "where the relief sought is prospective in nature and is based on an ongoing violation of the plaintiff's federal constitutional or statutory rights." *Id.* at 967-68 (internal quotation marks, citation, and emphasis omitted); *see also Papasan v. Allain*, 478 U.S. 265, 277-78 (1986). While claims against an official for prospective relief generally are cognizable, claims for retrospective relief are not. *Papasan*, 478 U.S. at 277-78. Thus the Eleventh Amendment bar applies "if the relief is tantamount to an award of damages for a past violation of federal law, even though styled as something else." *Id.* at 278. "On the other hand, relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury." *Id.*

Defendants assert that despite Plaintiff's characterization of its claims as seeking only prospective declaratory and injunctive relief, the effect of a judgment in Plaintiff's favor on those claims would require CalPERS to retroactively credit eligible employees for benefits under the 2%-at-60 formula. Defendants contend that payment of those retroactive benefits would be from

the Public Employees' Retirement Fund, which is maintained in the State Treasury. *See* Cal. Gov't Code §§ 20170, 20177. Thus, Defendants argue, the *Ex Parte Young* doctrine does not apply. In response, Plaintiff asserts that a judgment in its favor would not implicate state funds. Plaintiff cites to several provisions of PERL in an attempt to illustrate that any obligation to cure the prior denial of pension benefits under the more favorable 2%-at-60 formula would be borne by the District, not CalPERS or the state. *See* Pl.'s Opp. at 19-20.

After examining all of the statutory provisions and other authorities cited by the parties, the Court cannot now determine which entity would be required to cure the prior denial of pension benefits at the 2%-at-60 level if Plaintiff were to prevail in this lawsuit. Thus even if Plaintiff's claim against the individual defendants could be characterized as seeking retrospective relief, it is not clear on the face of the complaint or from matters judicially noticeable that a judgment in Plaintiff's favor would require expenditure of state funds.

Accordingly, Defendants' motion to dismiss on Eleventh Amendment grounds is DENIED as to Plaintiff's claims against the individual defendants.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

Defendants' motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND as to the State and CalPERS on Eleventh Amendment grounds and otherwise is DENIED.

Dated: September 11, 2015

BETH LABSON FREEMAN
United States District Judge

15