**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| LOCAL 101 OF THE AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES,<br><br>Plaintiff,<br><br>v.<br><br>EDMUND G. BROWN, et al.,<br><br>Defendants. | Case No. 14-cv-05640-BLF<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF 72, 75] |

In the aftermath of the 2008 Great Recession and in response to alarming financial predictions regarding underfunded state and local agency pension funds, the California Legislature approved and the Governor signed legislation reducing the maximum pension benefits available to future public employees under the California Public Employees Retirement System ("CalPERS"). That law, the California Public Employees' Pension Reform Act of 2013 ("PEPRA"), took effect on January 1, 2013. This lawsuit raises questions regarding the legal effect of PEPRA on a preexisting collective bargaining agreement ("CBA") with which it conflicts.

Prior to PEPRA, Plaintiff Local 101 of the American Federation of State, County, and Municipal Employees ("AFSCME") and the Santa Clara Valley Water District ("District") tackled the pension crisis by negotiating a CBA providing for a two-tier benefit plan, one tier for existing employees and a second, lesser tier, for employees hired on or after the CBA's effective date. The CBA, which covers the period January 1, 2012 through December 31, 2014, provides that pension benefits under the second tier are to be determined using the formula 2%-at-60. However, PEPRA provides that pension benefits for new members of CalPERS hired on or after January 1, 2013 are to be determined using the less favorable formula 2%-at-62. CalPERS has applied the negotiated

1    2%-at-60 formula to District employees who were hired after the CBA's effective date of January

2    1, 2012 and before PEPRA's effective date of January 1, 2013, but it has applied the less favorable

3    2%-at-62 statutory formula to District employees who were hired and entered CalPERS on or after

4    January 1, 2013.

AFSCME brings suit under the Contract Clause of the United States Constitution, claiming that the enactment of PEPRA substantially impaired the CBA term providing for application of the 2%-at-60 formula to employees hired after the CBA's effective date.[1] AFSCME sues California Governor Edmund G. Brown and other state officials for declaratory and injunctive relief, seeking to preclude Defendants "from applying PEPRA in a manner that impairs the CBA."

The parties have filed cross-motions for summary judgment. For the reasons discussed below, Defendants' motion for summary judgment is GRANTED and AFSCME's motion for summary judgment is DENIED.

**I.    UNDISPUTED FACTS AND LEGAL BACKGROUND**

The facts set forth in this section are undisputed. In the course of discussing the facts, the Court also provides some legal background that is necessary to a full understanding of the parties' dispute.

**The Public Employees' Retirement Law and CalPERS**

The Public Employees' Retirement Law ("PERL"), Cal. Gov't Code § 20000 *et seq.*, "established a retirement system (now known as the California Public Employees' Retirement System or CalPERS) for employees of the state as well as participating counties and other local public agencies." *Sonoma Cty. Employees' Ret. Ass'n v. Superior Court*, 198 Cal. App. 4th 986, 995 n.4 (2011). In order to participate in CalPERS, a local public agency must enter into a contract with CalPERS' governing board. Cal. Gov't Code § 20460. Such contract "subjects the contracting agency and its employees to all provisions of [PERL] and all amendments thereto"

---

[1] It has been unclear from the inception of this litigation whether AFSCME also asserts a Contract Clause claim based on the CBA's 3% cost-sharing term. AFSCME has not addressed that claim in its briefing, and thus has made clear that it is not pursuing it. *See Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (plaintiff's claims not addressed in opposition to motion for summary judgment deemed abandoned).

except for those provisions of PERL that are "expressly inapplicable" to the contracting agency "until it elects to be subject to those provisions." Cal. Gov't Code § 20506. The contracting agency must "select from a suite of benefit options authorized by PERL to be included in its contract with CalPERS." Brooks Decl. ¶ 7, ECF 77. CalPERS "may refuse to contract with, or to agree to an amendment proposed by, any public agency for any benefit provisions that are not specifically authorized by [PERL] and that the board determines would adversely affect the administration" of CalPERS. Cal. Gov't Code § 20461.

### **The District is a "Contracting Agency" under PERL**

The District is a "contracting agency" under PERL which has elected to participate in CalPERS. The District's predecessor agency, the Santa Clara County Flood Control and Water Conservation District, entered into a contract with CalPERS' predecessor, the State Employees' Retirement System, effective January 1, 1962. Brooks Decl. ¶ 14 & Exh. 4, ECF 77. The contract has been amended seventeen times since then, most recently in 2012. *Id.* ¶ 16.

To facilitate the contracting process, CalPERS makes available to local public agencies two publications: the Optional Benefits Listing and the CalPERS Guide to the Optional Benefits Listing. Brooks Decl. ¶¶ 8-9, ECF 77. Those publications describe the retirement benefit formulas and optional benefits available to contracting agencies under PERL along with their estimated costs. *Id.* ¶ 9 & Exhs. 2, 3. The 2011 Optional Benefits Listing included the following language in its introduction: "The following optional contract provisions are intended to provide basic information regarding the benefits that are available to contracting agencies through various sections of the Public Employees' Retirement Law. *Legislative changes may alter the information in this document.*" Brooks Decl. ¶ 10 & Exh. 3 (emphasis added). In 2011, the following retirement formulas were available under PERL: 1.5%-at-65, 2%-at-55, 2.5%-at-55, 2.7%-at-55, 2%-at-60, and 3%-at-60. Brook Decl. ¶ 11.

### **The 2012 CBA between the District and AFSCME**

Against this backdrop, the District and AFSCME entered into negotiations regarding a CBA for the period January 1, 2012 through December 31, 2014. The District and AFSCME have a longstanding relationship under which they have entered into successive CBAs, which the

3

parties also refer to as memoranda of understanding, or "MOUs." AFSCME is well aware that the District is a "contracting agency" under PERL which participates in CalPERS. Indeed, during negotiation of the CBA at issue in this lawsuit, AFSCME requested and received a copy of the 2008 District-CalPERS Contract in effect at the time. Glickman Decl. ¶ 10, ECF 76. AFSCME also was provided with a hyperlink to the 2011 CalPERS Optional Benefits Listing, describing the retirement benefit options available under PERL. *Id.* ¶ 13.

The parties ultimately entered into the CBA, effective January 1, 2012 through December 31, 2014, providing in relevant part as follows:

> The District will continue to participate in the Public Employees' Retirement System (PERS) with benefits as currently provided at the 2.5% @ 55 Formula Benefit Level for employees hired prior to January 1, 2012. *Employees hired January 1, 2012 or thereafter, will participate in the Public Employees' Retirement System (PERS) with benefits provided in the contract with PERS at the 2% @ 60 formula Benefit Level.*

CBA Art. 6, Section 1.A, Glickman Decl. Exh. 1, ECF 76 (emphasis added).

### **2012 Contract between the District and Cal-PERS**

The District thereafter entered into the most recent iteration of its contract with Cal-PERS. Consistent with the 2012 CBA, the District continued with its previous selection of the 2.5%-at-55 formula for existing members and selected the 2%-at-60 formula for new members. *See* 2012 District-CalPERS Contract, Brooks Decl. Exh. 5, ECF 77. Specifically, the 2012 District-CalPERS Contract provides that benefits for employees entering membership in CalPERS before the contract's effective date "shall be determined in accordance with [California Government Code] Section 21354.4 . . . (2.5% at age 55 Full)"; and that benefits for employees entering membership in CalPERS after the contract's effective date "shall be determined in accordance with [California Government Code] Section 21353 . . . (2% at age 60 Full)." *Id.* ¶¶ 9-10.

The 2012 District-CalPERS Contract also contains the following language:

> Public Agency shall participate in the Public Employees' Retirement System from and after January 1, 1962 *making its employees* as hereinafter provided, *members of said System subject to all provisions of the Public Employees' Retirement Law* except such as apply only on election of a contracting agency and are not provided for herein *and to all amendments to said Law hereafter enacted* except those, which by express provisions thereof, apply only on the election of a contracting agency.

4

2012 District-CalPERS Contract ¶ 2, Brooks Decl. Exh. 5 (emphasis added). All prior iterations of the contract contain substantially similar language. Brooks Decl. ¶ 16.

### **The Public Employees Pension Reform Act of 2013**

After the CBA took effect, PEPRA was enacted by the California Legislature and signed by Governor Brown. "PEPRA was designed to limit public employee retirement compensation – within constitutional bounds – in the face of concern over unfunded liabilities." *San Joaquin Cnty. Correctional Officers Ass'n v. Cnty. of San Joaquin*, 6 Cal. App. 5th 1090, 1095 (2016). The Governor and Legislature had been advised that California's pension plans were dangerously underfunded and that absent aggressive reforms the situation would become dire, "forcing counties and cities to severely reduce services and lay off employees to meet pension obligations." *Id.* (internal quotation marks and citations omitted). "PEPRA, part of the Legislature's response to this perceived problem, in part made fundamental alterations in the manner in which public pensions are calculated." *Id.* (internal quotation marks and citations omitted).

Among other things, PEPRA amends PERL to limit the defined benefit formulas available to new members of CalPERS. *See* Cal. Gov't Code §§ 20004, 7522.15; *Deputy Sheriffs' Ass'n of San Diego Cnty. v. Cnty. of San Diego*, 233 Cal. App. 4th 573, 577 (2015). Whereas prior to PEPRA's effective date a local agency which elected to participate in CalPERS could select from several different defined benefit formulas, PEPRA requires that public employers and public retirement systems offer new members *only* the defined benefit formula established under the statute. *See* Cal. Gov't Code § 7522.15. As relevant here, that formula is 2%-at-62. *See* Cal. Gov't Code § 7522.20(a).

### **AFSCME's Arbitration against the District**

The District informed AFSCME that it would implement PEPRA by applying the statutory 2%-at-62 formula to new employees entering CalPERS on or after PEPRA's effective date of January 1, 2013. AFSCME instituted a grievance against the District under the CBA's grievance and arbitration procedures. The arbitrator framed the issue as follows: "Did the District violate the MOU and/or California bargaining law by failing to negotiate over changes instituted by the District for pension benefits as announced on December 21, 2012; if so, what is the appropriate

5

remedy?" Arbitration Award, Compl. Exh. 1, ECF 1. The arbitrator answered the first question in the affirmative and determined that the appropriate remedy for the District's failure to bargain was to order the District to cease and desist from implementing PEPRA with respect to employees covered under the CBA and to provide benefits under the terms of the CBA. *Id.* AFSCME sought to confirm the arbitration award against the District in the Santa Clara County Superior Court and named the CalPERS Board of Administration ("CalPERS Board") as an indispensable party to that action. The superior court dismissed the CalPERS Board on the ground that it was not a party to the underlying arbitration, confirmed the arbitration award against the District, and entered judgment on May 12, 2014. *Id.* The District sought to comply with the superior court's judgment by requesting that CalPERS honor the judgment and the terms of the CBA. CalPERS declined and it has continued to comply with PEPRA.

**The Present Lawsuit**

On December 29, 2014, AFSCME filed the present action, asserting that California's enactment of PEPRA substantially impaired the CBA in violation of the Contract Clause of the United States Constitution. The complaint names as defendants Edmund G. Brown, Jr., in his official capacity as the Governor of the State of California; several members of the CalPERS Board, in their official capacities; Anne Stausboll, in her official capacity as Chief Executive Officer of CalPERS; the State of California; and CalPERS. The complaint also names the District as an indispensable party/party in interest.

AFSCME asserts claims for: (1) declaratory judgment and injunctive relief against all defendants under 28 U.S.C. §§ 2201-2201 and the Contract Clause; and (2) declaratory judgment and injunctive relief against the individual defendants under 42 U.S.C. § 1983 and the Contract Clause. In its prayer, AFSCME requests a declaratory judgment that PEPRA unconstitutionally impaired the CBA; a permanent injunction prohibiting Defendants and those in concert with them from applying PEPRA in a manner that impairs the CBA; an award of fees and costs, including costs awardable under 42 U.S.C. § 1988(b); and such other relief as the Court deems just and proper.

Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure

1  12(b)(6). The Court granted the motion in part, dismissing the State of California and CalPERS

2  on Eleventh Amendment grounds, and denied the motion as to the remaining defendants. *See*

3  Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, ECF 55. The parties

4  subsequently filed the present cross-motions for summary judgment.

## II. LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). The moving party has the burden of establishing that there is no dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "[T]he 'mere existence of a scintilla of evidence in support of the plaintiff's position'" is insufficient to defeat a motion for summary judgment. *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

Both AFSCME and Defendants seek summary judgment on AFSCME's Contract Clause claims, which are the only claims asserted in the complaint. The Contract Clause provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. Art. I, § 10, cl. 1. "Although the Contract Clause appears literally to proscribe 'any' impairment . . . the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula." *United States Trust Co. of New York v. State of New Jersey*, 431 U.S. 1, 21 (1977) (internal quotation marks and citation omitted). "[T]he Contract Clause does not prohibit the States from repealing or amending statutes generally, or from enacting legislation with retroactive effects." *Id.* at 17. However, "a State cannot refuse to meet its legitimate financial obligations simply because it would prefer to spend the money to promote the public good rather than the

7

private welfare of its creditors." *Id.* at 29. "Legislation adjusting the rights and responsibilities of contracting parties must be upon reasonable conditions and of a character appropriate to the public purpose justifying its adoption." *Id.* at 22.

When evaluating a Contract Clause claim, a court first must determine "whether the change in state law has operated as a substantial impairment of a contractual relationship." *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (internal quotation marks and citation omitted). If a substantial impairment is found, the court must determine whether the impairment "is reasonable and necessary to serve an important public purpose." *United States Trust Co.*, 431 U.S. at 25; *see also San Diego Police Officers Ass'n v. San Diego City Employees' Retirement Sys.*, 568 F.3d 725, 737 (9th Cir. 2009). If so, the impairment may be constitutional. *United States Trust Co.*, 431 U.S. at 25.

AFSCME argues that the undisputed facts establish that the enactment of PEPRA has substantially impaired the CBA and that the impairment is not reasonable and necessary to serve an important public purpose. Defendants make precisely the opposite argument, asserting that the undisputed facts establish that the enactment of PEPRA has not "substantially impaired" a contractual relationship as that phrase is used in controlling case law, and that any impairment caused by PEPRA is reasonable and necessary to serve an important public purpose.

### A. Substantial Impairment of a Contractual Relationship

The first prong of the Contract Clause inquiry "has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Romein*, 503 U.S. at 186; *see also San Diego Police Officers Ass'n*, 568 F.3d at 736-37 (reciting test).

#### 1. Contractual Relationship

The Ninth Circuit has clarified that the "contractual relationship" requirement articulated in *Romein* is satisfied only if "a contract exists as to the specific terms allegedly at issue." *San Diego Police Officers*, 568 F.3d at 736. The parties agree that AFSCME and the District entered into a binding CBA which contains a specific term defining the level of pension benefits for employees hired on or after the CBA's effective date of January 1, 2012:

8

> The District will continue to participate in the Public Employees' Retirement System (PERS) with benefits as currently provided at the 2.5% @ 55 Formula Benefit Level for employees hired prior to January 1, 2012. *Employees hired January 1, 2012 or thereafter, will participate in the Public Employees' Retirement System (PERS) with benefits provided in the contract with PERS at the 2% @ 60 formula Benefit Level.*

CBA Art. 6, Section 1.A, Exh. 1 to Glickman Decl., ECF 76 (emphasis added). However, the parties disagree as to the scope and construction of that term. Defendants asserts that the above provision of the CBA expressly incorporates the 2012 District-CalPERS Contract. AFSCME disputes that assertion, arguing that the 2012 District-CalPERS contract is irrelevant to construction of the CBA. For the reasons discussed below, the Court concludes that based on the express language of the CBA and the record evidence, Defendants have established as a matter of law that the CBA incorporates the 2012 District-CalPERS contract and that, in fact, the above provision of the CBA would be meaningless absent such incorporation.

The phrase "2% @ 60 formula Benefit Level" is not defined in the CBA. As Defendants point out, the absence of such definition raises a number of critical questions which are not answered within the four corners of the CBA: "What counts as a service year? Is there a waiting period for pension rights to vest? Is there a minimum retirement age? Is there a cap on pensionable compensation?" Defs.' Motion at 12, ECF 75. The CBA's silence on these points is not surprising because the CBA clearly was not intended to be the sole source of pension rights for the District's employees. The CBA states plainly[2] that employees hired after the CBA's effective

---

[2] Under applicable federal common law, the "plain language of the contract should be considered first." *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1205 (9th Cir. 2011). The Court notes that the parties dispute whether federal common law or California law governs here. AFSCME cites Supreme Court authority for the proposition that "[t]he question whether a contract was made is a federal question for purposes of Contract Clause analysis," *Romein*, 503 U.S. at 187, while Defendants cite apparently conflicting Ninth Circuit authority stating that "federal courts look to state law to determine the existence of a contract" when evaluating a Contract Clause claim, *San Diego Police Officers*, 568 F.3d at 737. The Court need not resolve this dispute because California law also looks to the plain language of the contract to determine its meaning. *See Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 787 (9th Cir. 2008) ("In interpreting a contract under California law, a court must first look to the plain meaning of the contract's language."). Consequently, the Court's analysis would be the same under either federal common law or California law.

9

date of January 1, 2012 will receive the "benefits provided in the contract with PERS."[3] The "contract with PERS," that is, the 2012 District-CalPERS Contract, in turn provides that District employees are "subject to all provisions of the Public Employees' Retirement Law . . . and to all amendments to said Law hereafter enacted." 2012 District-CalPERS Contract ¶ 2, Brooks Decl. Exh. 5. Thus it is apparent that the term "2% @ 60 formula Benefit Level" is a catchphrase which encompasses all of the relevant provisions of the 2012 District-CalPERS Contract and, by extension, PERL. Those provisions fill in the material terms of the CBA contract with respect to District employees' pension benefits.

AFSCME's reliance on the arbitrator's ruling to establish that the CBA creates a freestanding pension obligation, independent of the 2012 District-CalPERS Contract, is unavailing. *See* Arbitration Award, Compl. Exh. 1, ECF 1. The arbitrator's decision may not be asserted against Defendants, who were not parties to the arbitration, under the doctrines of res judicata or collateral estoppel, and AFSCME has not demonstrated the existence of special circumstances warranting an exception to the normal rules of preclusion. *See Montana v. United States*, 440 U.S. 147, 153-55 (1979) (preclusion doctrines may be asserted only against parties to the prior proceeding or their privies, or in certain other exceptional circumstances). Moreover, the arbitrator neither considered nor determined whether the CBA incorporates the 2012 District-CalPERS contract. *See* Arbitration Award, Compl. Exh. 1, ECF 1.

Nor is AFSCME's position strengthened by its observation that the District is continuing to apply the 2%-at-60 formula to employees hired on or after January 1, 2012 and before PEPRA's effective date of January 1, 2013. Both the 2%-at-60 and 2%-at-62 formulas derive meaning from the 2012 District-CalPERS Agreement. Thus, the know-how in administering a particular benefits formula did not change under PEPRA; rather, the statutory authority changed.

AFSCME contends that the 2012 District-CalPERS Contract language upon which

---

[3] "[C]ontract law recognizes that terms can be incorporated into the parties' agreement by reference." *Rodman v. Safeway, Inc.*, No. 11-CV-03003-JST, 2014 WL 988992, at *11 (N.D. Cal. Mar. 10, 2014), aff'd, No. 15-17390, 2017 WL 3327829 (9th Cir. Aug. 4, 2017); *see also Madgrigal v. AT & T Wireless Servs., Inc.*, No. 1:09-CV-0033-OWW-MJS, 2010 WL 5343299, at *4 (E.D. Cal. Dec. 20, 2010) ("As with any contract, parties may incorporate by reference extrinsic materials into their arbitration agreements.").

10

Defendants rely, acknowledging that pension benefits are subject to PERL and its amendments, is obsolete. The language dates back to the original 1962 contract between the District's predecessor agency, the Santa Clara County Flood Control and Water Conservation District, and CalPERS' predecessor, the State Employees' Retirement System, *see* Brooks Decl. ¶ 14 & Exh. 4, ECF 77, and thus predates the Meyers-Milias-Brown Act ("MMBA"), California Government Code §§ 3500, et seq. The MMBA requires that a public agency negotiate in good faith with a recognized collective bargaining representative as to "matters within the scope of representation," Cal. Gov't Code § 3505, and that once agreement is reached, the public agency and the collective bargaining representative jointly reduce the terms of the agreement to a written memorandum of understanding, Cal. Gov't Code § 3505.1. Pension and retirement benefits are a mandatory subject of bargaining under the MMBA. *See* Cal. Gov't Code § 20475. And, as AFSCME points out, that bargaining must address the terms and conditions of employment for future employees to be hired during the term of the CBA. AFSCME reasons that because the MMBA now makes clear that public agencies must enter into binding CBAs with unions regarding pension benefits, the subject contract language predating the MMBA necessarily is obsolete and unenforceable.

However, neither the MMBA nor PERL requires or authorizes negotiation of a CBA that supplants state pension laws. Moreover, nothing in this record suggests that the continued inclusion of the 1962 language is the result of unthinking copying of obsolete language from contract to contract as AFSCME argues. To the contrary, it appears that the 1962 language is foundational to the District-CalPERS contractual relationship, which has carried forward unchanged through seventeen iterations of the contract over more than fifty years, and finds its authority in the governing statute, PERL.

The Court therefore concludes as a matter of law that Defendants have established that the 2012 District-CalPERS Contract is fully incorporated into and an integral part of the CBA. Defendants go a step too far, however, to the extent that they argue the 2%-at-60 term is not sufficiently definite to satisfy the first step of a Contract Clause analysis because it always has been subject to potential statutory amendment. At the time the CBA was executed, the 2%-at-60 term was entirely consistent with then-existing California law. Setting aside for the moment the

effect of later-enacted PEPRA, which is discussed below, the District and AFSCME clearly entered into a contract "as to the specific term[] allegedly at issue," *San Diego Police Officers*, 568 F.3d at 736.

This conclusion is consistent with numerous cases holding that negotiated terms of public employee collective bargaining agreements satisfy the contractual relationship requirement. *See, e.g., Univ. of Hawaii Prof'l Assembly v. Cayetano*, 183 F.3d 1096 (9th Cir. 1999) (finding impairment for Contract Clause purposes resulting from enactment of "pay lag" law allowing state to postpone the dates on which state employees were paid); *Toledo Area AFL-CIO Council v. Pizza*, 154 F.3d 307 (6th Cir. 1998) (statute impaired contracts by abrogating terms of pre-existing collective bargaining agreements granting public employees the right to make political contributions through wage checkoffs); *Baltimore Teachers Union v. Mayor and City Council of Baltimore*, 6 F.3d 1012 (4th Cir. 1993) (salary reductions implemented to meet budgetary shortfall impaired contract with teachers and police but impairment was permissible under the Contract Clause).

Having determined the existence and scope of the contract providing pension benefits to District employees hired on or after January 1, 2012, the Court turns to the parties' arguments regarding substantial impairment.

### 2. Impairment and Substantiality

Once the existence of a contractual relationship is established, the party asserting a Contract Clause claim must establish that a change in law impairs the contractual relationship and that the impairment is substantial. *See Romein*, 503 U.S. at 186. While *Romein* treats impairment and substantiality separately, many cases addressing Contract Clause claims analyze the two requirements together, asking whether the change in law "substantially impairs" the contractual relationship. *See, e.g., Energy Reserves Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 413 (1983) ("The threshold determination is whether the Kansas Act has impaired substantially ERG's contractual rights."); *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 890 (9th Cir. 2003) (addressing as threshold question whether "the trench cut ordinance substantially impairs the 1938 Franchise"). This Court finds it appropriate to adopt the latter approach here, where the

12

parties have not briefed the requirements of impairment and substantiality separately.

In determining whether a change in law "substantially impairs" a contractual relationship within the meaning of *Romein*, the Court must examine the reasonable expectations of the contracting parties. *See Energy Reserves*, 459 U.S. at 411, 413-16 (no impairment of contract where existence of substantial regulation of the industry at time of contracting indicated that party's reasonable expectation could not have been impaired by subsequent legislation); *S. Cal. Gas*, 336 F.3d at 891 (considering whether ordinance substantially impaired party's "rights, obligations, and reasonable expectations); *Ross v. City of Berkeley*, 655 F. Supp. 820, 828 (N.D. Cal. 1987) (considering whether "operation of the ordinance comports with the reasonable expectations of the parties"). Consequently, identifying AFSCME's reasonable expectations against the backdrop of the 2008 Great Recession, the statutory scheme governing CalPERS, the negotiation of the CBA, and the 2012 District-CalPERS Contract and all its prior versions is key to resolution of the parties' cross-motions for summary judgment.

Defendants argue that amendment to PERL, and specifically PEPRA, could not have defeated AFSCME's reasonable expectations, because AFSCME negotiated for its members' participation *in CalPERS* and AFSCME knew that CalPERS benefits are governed by PERL and any amendments thereto. As discussed above, PERL requires that in order to participate in CalPERS a local public agency must enter into a contract with CalPERS' governing board. Cal. Gov't Code § 20460. Such contract "subjects the contracting agency and its employees to all provisions of [PERL] and all amendments thereto" except for those provisions of PERL that are "expressly inapplicable" to the contracting agency "until it elects to be subject to those provisions." Cal. Gov't Code § 20506. Defendants present evidence that, consistent with PERL, the District's contract with CalPERS contains express language acknowledging that CalPERS members are "subject to all provisions of the Public Employees' Retirement Law . . . and to all amendments to said Law hereafter enacted." 2012 District-CalPERS Contract ¶ 2, Brooks Decl. Exh. 5, ECF 77 (emphasis added). All iterations of the District's contract with CalPERS have contained substantially similar language, all the way back to the original contract from 1962. Brooks Decl. ¶¶ 14, 16. As discussed above, this record does not suggest that the 1962 language

13

is obsolete as AFSCME argues, but rather that it is foundational to the decades-long contractual relationship between the District and CalPERS.

When negotiating the CBA, AFSCME requested and received a copy of the 2008 District-CalPERS Contract in effect at the time, which stated that District employees who participate in CalPERS are "subject to all provisions of the Public Employees' Retirement Law . . . *and to all amendments to said Law hereafter enacted*." Glickman Decl. ¶ 10 & Exh. 7 ¶ 2, ECF 76 (emphasis added). AFSCME went on to negotiate the CBA which, as the Court has determined above, provides for District employees' participation in CalPERS and expressly incorporates the District-CalPERS contract. CBA Art. 6, Section 1.A, Glickman Decl. Exh. 1, ECF 76. The 2012 District-CalPERS contract executed thereafter contains the identical language cited above from the 2008 District-CalPERS Contract, stating that District employees who participate in CalPERS are subject to all provisions of PERL and its amendments. 2012 District-CalPERS Contract ¶ 2, Brooks Decl. Exh. 5. Under these circumstances, Defendants argue, AFSCME cannot establish that its reasonable expectations were substantially impaired when PERL was amended.

AFSCME characterizes Defendants' argument as an "absurdity," asserting that the Supreme Court and the Ninth Circuit have rejected the notion that one party to a contract may reserve the right to unilaterally alter the terms of the agreement. *See United States Trust*, 431 U.S. at 25 n.23 ("A promise to pay, with a reserved right to deny or change the effect of the promise, is an absurdity.") (internal quotation marks and citation omitted); *S. Cal. Gas Co.*, 336 F.3d 893 ("We cannot read the 1938 Franchise in a way that reserves to Santa Ana the power to unilaterally alter the terms of the agreement. Such an interpretation is 'absurd.'"). The cases cited by AFSCME are distinguishable from this case, however, as they addressed impairment of contracts which conferred immediate benefits on the contracting plaintiffs which were impaired by the new laws. Those cases prohibited retroactive application of the newly enacted laws.

Moreover, as Defendants point out, it is well-established under California law that a prospective public employee has no vested pension rights. *See Deputy Sheriffs*, 233 Cal. App. 4th at 579 ("Generally, the contractual basis of a pension right is the exchange of an employee's services for the pension right offered by the statute and thus future employees do not have a vested

14

right in any particular pension plan.") (internal quotation marks, citations, and brackets omitted). AFSCME argues that *Deputy Sheriffs* and the other cases cited by Defendants regarding public employees' statutory pension rights miss the mark, because AFSCME is not attempting to enforce the statutory pension rights of individual public employees but rather *contractual* pension rights for which AFSCME bargained. AFSCME asserts that cases addressing public employees' statutory pension rights have "limited force where, as here, the parties are legally authorized to enter (and have in fact entered) into bilateral contracts to govern the employment relationship." *Retired Employees Assn. of Orange Cty., Inc. v. Cty. of Orange*, 52 Cal. 4th 1171, 1182 (2011). This Court previously has determined that under the MMBA AFSCME was required to and did bargain on behalf of future employees. However, AFSCME bargained for those future employees' participation *in CalPERS* under the applicable state law, PERL. Accordingly, future employees' pension benefits are subject to PERL not because pension rights generally are governed by statute in California, but because the CBA negotiated by AFSCME and the District expressly incorporated the 2012 District-CalPERS Contract and, by extension, the provisions of PERL. Thus while the bargain negotiated by AFSCME certainly protects the pension rights of previously hired employees, it does not curtail the California Legislature's authority to amend PERL as applied to new employees and in fact it expressly recognizes the Legislature's authority to do so.

This case is virtually on all fours with *Deputy Sheriffs*, which involved a plaintiff union's claim that California's contract clause prohibited PEPRA's application to employees who were hired after PEPRA's effective date but who were covered by preexisting collective bargaining agreements containing conflicting terms. *See Deputy Sheriffs*, 233 Cal. App. 4th 573. The only significant factual differences between the two cases are that *Deputy Sheriffs* addressed a contract clause claim brought under the California Constitution rather than the United States Constitution, and the CBA in *Deputy Sheriffs* covered employees who participated in the county's retirement system rather than CalPERS. Those distinctions are immaterial, however. "The contract clauses of both the federal and California Constitutions prohibit a state from passing laws impairing the obligation of contracts." *Teachers' Retirement Bd. v. Genest*, 154 Cal. App. 4th 1012, 1026

(2014) (citing U.S. Const., Art. I, § 10; Cal. Const., Art. I, § 9). Moreover, the fact that the employees in *Deputy Sheriffs* participated in a retirement system administered by the county, rather than the state, does not affect this Court's analysis of the issues before it.

In rejecting the plaintiff union's claim in *Deputy Sheriffs*, the California Court of Appeal noted that terms and conditions of public employment generally are controlled by statute rather than contract and that pension rights under those statutes do not vest until an employee starts work. *Deputy Sheriffs*, 233 Cal. App. 4th at 577-79. The union acknowledged that its new members "did not have a vested right to the application of the negotiated 3% @ 55 formula because they had not performed any services for the county before [PEPRA's] effective date." *Id.* at 579. However, the union argued that the *collective bargaining agreements* gave rise to constitutionally protected rights because the agreements predated PEPRA, were binding, and required use of the negotiated formula until they expired. *Id.* The court concluded that "the association's position conflicts with authorities indicating there is no contract clause protection for unvested contractual pension rights." *Id.*

*Deputy Sheriffs* accurately summarizes California law regarding a future public employee's rights – or lack thereof – to unvested pension benefits. That legal backdrop informs this Court's consideration of the parties' reasonable expectations when negotiating the CBA. The Court concludes that in light of the statutory scheme set forth in PERL, as expressly recognized in the 2012 District-CalPERS Contract, and as known to AFSCME at the time the CBA was negotiated, the reasonable expectations of the parties necessarily encompassed the possibility that the Legislature might alter the pension benefits available to future employees under CalPERS. This is particularly true where California was in the midst of a crisis with respect to unfunded public pension liabilities, a subject of much public and legislative debate, and therefore could be expected to take some action with respect to pension reform. *See generally Marin Ass'n of Pub. Employees v. Marin Cty. Employees' Ret. Ass'n*, 2 Cal. App. 5th 674, 680-82 (Cal. Ct. App. 2016), *review granted*, 383 P.3d 1105 (Cal. Nov. 22, 2016)[4]; Little Hoover Comm'n, Public Pensions for

---

[4] *Marin Ass'n* is cited for background purposes only. As AFSCME correctly points out, the decision has no binding or precedential effect because review has been granted by the California

Retirement Security (Feb. 2011), Glickman Decl. Exh. 3, ECF 76. As such, the Court concludes that AFSCME's reasonable expectations are confined by the plain language of the CBA and the 2012 CalPERS Agreement incorporated into the CBA.

AFSCME cites *California Ass'n of Prof'l Scientists v. Schwarzenegger* for the proposition that "[w]hen a collective bargaining agreement purports to secure pension rights for future employees, it may well be that the federal and state contract clauses protect the rights of future employees as much as the rights of existing employees." *California Ass'n of Prof'l Scientists v. Schwarzenegger ("CAPS")*, 137 Cal. App. 4th 371, 383 (2006). In *CAPS*, the plaintiff union asserted that a pre-PEPRA amendment to PERL impaired a collective bargaining agreement between itself and the state, covering employees employed directly by the state. The change in pension rights applied only to future employees, not those already employed by the state when the amendment took effect. *Id.* The court found that fact to be extremely significant, holding that it would not interpret the CBA to impose "a fundamental constraint on the freedom of action of the Legislature" to "change the character of a pension program as to new employees" unless no other reasonable interpretation existed. *Id.* Consequently, while the *CAPS* court did make the statement relied on by AFSCME regarding the possibility that a CBA may secure pension rights for future employees, it concluded that it did not need to reach that issue because the CBA before it "did not promise to leave unchanged the pension rights of future employees." *Id.*

The holding in *CAPS* appears to rest in part upon the recognition that the state has a right to, and might be expected to, amend a statutory pension scheme that it created. *See CAPS* at 385-86. Thus to the extent that the collective bargaining agreement in *CAPS* simply incorporated the existing statutory scheme, and placed the union's members on the same footing as any other employee under that scheme, the union's future members would not be protected against statutory amendments. When this Court addressed *CAPS* in the context of Defendants' motion to dismiss, it concluded that the reasoning therein did not apply to this case based on its understanding that the CBA "did not incorporate an existing statutory pension scheme." Order Granting in Part and

---

Supreme Court, and thus may be cited for potentially persuasive value only. *See* California Rules of Court, Rule 8.115(e)(1).

17

Denying in Part Defendants' Motion to Dismiss at 11, ECF 55. Based on the limited record before it, the Court understood that "pension formulas and other retirement benefits were purely a matter of negotiation between AFSCME and the District prior to the enactment of PEPRA." *Id.* On the more fully developed record now before the Court, it is clear that the Court's prior understanding was erroneous and that in fact the CBA *does* incorporate the existing statutory scheme set forth in PERL.

Accordingly, while *CAPS* is distinguishable in that the CBA addressed therein was negotiated with the state and covered direct employees of the state, the decision demonstrates that California courts will not construe a CBA to constrain the state Legislature's authority to change future employees' pension benefits absent an express waiver of that authority. Based on the reasoning of the *CAPS* court with respect to the facts presented there, this Court concludes that the *CAPS* court would apply the same reasoning to the CBA at issue here, which incorporates the 2012 District-CalPERS Contract and, therefore, PERL and its amendments. Thus *CAPS* does not support AFSCME's position.

Based on the foregoing, the Court concludes as a matter of law that PEPRA did not substantially impair the CBA within the meaning of *Romein* and other cases addressing the Contract Clause. This is not to say that PEPRA did not have a significant impact on the pension benefits of employees hired during the period governed by the CBA but after PEPRA's effective date. It clearly did. And the Court finds that fact to be particularly poignant given that AFSCME made the difficult decision to endorse a lower second tier of benefits during the state's financial crisis, only to find the floor on pension benefits dropping yet again after the CBA was signed. However, AFSCME's early response to the pension crisis cannot be deemed to alter the state's legislative prerogative to modify pension benefits for future CalPERS members, particularly where – as here – that prerogative was expressly preserved in the 2012 CalPERS Agreement.

The Court's ruling is based solely on its application of the relevant authorities addressing the Contract Clause. Under those authorities, as discussed above, a change in law constitutes a substantial impairment of a contractual relationship only if the asserted impairment is outside the reasonable expectations of the parties. Based on the undisputed facts in this record, amendment to

PERL clearly was within the reasonable expectations of AFSCME and the District when they negotiated the CBA. Defendants are entitled to summary judgment on that basis.

In light of this conclusion, the Court need not reach the second prong of the Contract Clause analysis, whether the impairment "is reasonable and necessary to serve an important public purpose." *United States Trust Co.*, 431 U.S. at 25.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Defendants' motion for summary judgment is GRANTED; and

(2) AFSCME's motion for summary judgment is DENIED.

Dated: August 16, 2017

_____
BETH LABSON FREEMAN
United States District Judge

19